UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GREYCLOUD LAWLER,

                    Petitioner,

          v.

MICHAEL OBENLAND,

                    Respondents.

CASE NO. 3:17-cv-05824-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  JUNE 1, 2018

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura.  The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.  Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner alleges that his conviction was unlawful because a biased juror sat on his jury, he was not allowed to effectively cross-examine the state's key witness, and the prosecutor improperly commented on his demeanor in closing argument, thereby improperly swaying the jury. However, petitioner has not shown that state court unreasonably applied established federal

law regarding juror bias, nor has he shown how the exclusion of marginally relevant evidence violated his right to confront a witness against him or how the single comment by the prosecutor was so substantial and injurious as to violate due process. Therefore, the Court recommends petitioner's habeas petition be denied.

## PETITIONER'S CLAIMS IN THIS HABEAS PETITION

1. Petitioner's right to an impartial jury was violated when a biased juror was allowed to sit for his trial.

2. Petitioner's right to confront the witnesses against him was violated when he was not allowed to present evidence of his victim's drug use.

3. The prosecutor committed misconduct when he referenced petitioner's demeanor in his closing argument

## BASIS FOR CUSTODY AND FACTS

Petitioner was convicted of second degree rape, second degree kidnapping, second degree assault, felony harassment, possession of a controlled substance, and interference with reporting domestic violence. He was sentenced to 283 months to life imprisonment and is currently incarcerated in the Monroe Correctional Complex.

The Washington State Court of Appeals stated the facts of petitioner's case as follows:

### *Motel Incident*

Lawler and MDJ started dating in March 2013. On February 14, 2014, they checked into a motel in Hazel Dell. After dinner they had an argument. The argument escalated, and Lawler became violent when MDJ said she wanted to leave. Lawler covered MDJ's mouth as she tried to scream and eventually caused her to lose consciousness. When MDJ regained consciousness, Lawler strangled her again until she passed out.

The violence ultimately subsided, and Lawler and MDJ slept next to one another. Lawler slept with a knife at his side. In the middle of the night, MDJ woke up to use the bathroom. Lawler, upset by the thought of MDJ leaving the motel room, took the bedding from the bed and his knife and slept in front of the door so MDJ could not leave. Lawler threatened MDJ, telling her that she was not going home and that she was not going to see her children again.

REPORT AND RECOMMENDATION - 2

1

2    The next morning, MDJ told Lawler that she was upset about the night before and
     that she did not want to leave with him. Provoked by MDJ's comments, Lawler
3    dragged her off the bed and into the bathroom, and threatened to drown her in the
     toilet. When Lawler and MDJ were preparing to leave the motel, Lawler told MDJ
4    that he had come to the room to have sexual intercourse and that they were not
     leaving until that happened. Lawler then forced MDJ to have intercourse. Out of
5    fear, MDJ did not fight Lawler, although she made clear to Lawler that she did not
     want to have intercourse.

6    Eventually MDJ was able to get out of the room and down to the front desk, where
     she told the motel clerk that she had been assaulted and called 911. Lawler left the
7    motel on foot before the police arrived.

8    Police and medical personnel arrived at the motel and noticed bruising and scrapes
     on MDJ's face and bruising on her arms that resembled fingerprints. The
9    paramedics transported MDJ to the hospital, and MDJ received treatment from a
     sexual assault nurse examiner. MDJ reported that she had been held against her will
10   and repeatedly assaulted and raped and that she was in pain and felt nauseous.
     Based on MDJ's physical condition and her complaints, the treating doctor
11   prescribed MDJ pain and anti-nausea medications.

12   Police later arrested Lawler and found that he was carrying an eight-inch knife in a
     leather sheath, a 12-inch blade with no handle, and a balloon full of a powdery
13   substance that later was identified as methamphetamine. The State charged Lawler
     with first degree rape, second degree kidnapping, second degree assault, felony
14   harassment, possession of a controlled substance, and interference with reporting
     domestic violence. The State alleged that the rape, kidnapping and harassment were
15   committed while Lawler was armed with a deadly weapon.

16   Dkt. 13, Ex. 11 at 1-3; *State v. Lawler*, 194 Wash. App. 275, 278-79 (2016) (citations to the

17   record omitted).

18        During voir dire, the prosecutor asked the venire whether any juror or close family or

19   friends had either been victims or perpetrators of sexual assault. Dkt. 13, Ex. 3 at 18-38. Of the

20   35 member jury venire, 14 individuals stated they had personal experience with sexual assault or

21   had a friend or family member with that experience. *Id*. Juror 23 was among these 14 potential

22   jurors.  Of the 14 jurors who acknowledged their connection to sexual assault, three stated they

23   could remain impartial, and two stated they could not. *Id*. at 18-38. The remaining nine jurors

24

REPORT AND RECOMMENDATION - 3

1   were uncertain about their ability to remain impartial, stating variously that they would try to

2   remain objective but were unsure about whether their past experiences would impede that ability.

3   *Id*. Juror 23 was among this group of potential jurors.

4       Indeed, the trial court noted that "we have quite a few jurors who had problems with this

5   particular case," discussing both the jurors who had experienced sexual assault as well as other

6   bias and logistics issues. *Id*. at 53-54. The prosecutor also noted that there were numerous jurors

7   who were ambivalent about whether they could remain impartial and stated it was difficult to tell

8   who was actually having issues remaining impartial, and who was using false ambivalence as an

9   excuse to avoid jury duty. *Id*. at 59. In any event, defense counsel did not challenge Juror 23 for

10  cause or remove him with a preemptory challenge.

11      On direct appeal, petitioner asserted the alleged bias of Juror 23 and the Court of Appeals

12  addressed the issue as follows:

13      ***Jury Selection***

14      During the questioning of prospective jurors, the prosecutor asked if any of the
        potential jurors had a family member or friend involved in a situation of sexual

15      assault or physical violence. Juror 23 indicated that his mother had been removed
        from her biological father when she was a child, that his older half-sister had been

16      raped by her stepfather, and that his niece who was living with him had been
        physically and mentally abused by her previous boyfriend.

17

18      The prosecutor asked whether these experiences would make it difficult for him to
        be fair and impartial, and juror 23 responded, "I don't see how I could be objective

19      with all that past experience." When the prosecutor asked juror 23 if he could set
        his personal experiences aside and follow the trial court's instruction, he replied,
        "Honestly, I think that would be a pain in the neck, you know. I don't think I would

20      be able to do that with all these experiences." Neither party nor the trial court
        followed up on juror 23's answers.

21

22      As voir dire progressed, defense counsel questioned several jurors regarding their
        previously expressed concerns and apprehensions, but did not further question juror

23      23. When defense counsel asked the potential jurors who would be uncomfortable
        serving on the jury, juror 23 raised his number. Neither the parties nor the trial court
        followed up on this response.

24

REPORT AND RECOMMENDATION - 4

The trial court was actively involved in discussions with counsel about what jurors should be dismissed for cause. The trial court noted that "[w]e had quite a number of people who had concerns that they wouldn't be able to be fair due to issues related to the case." The trial court suggested that two jurors be dismissed, and neither party objected. Lawler challenged three other jurors for cause. However, the trial court did not mention juror 23 and Lawler did not challenge juror 23 for cause. Lawler then exercised five of his six preemptory challenges, none of which were for juror 23. And Lawler passed on the exercise of his final peremptory challenge. Juror 23 was seated on the jury.

***Verdict***

The jury found Lawler guilty of the lesser offense of second degree rape, second degree kidnapping, second degree assault, harassment, possession of a controlled substance, and interference with reporting domestic violence. The jury also found by special verdicts that Lawler committed the rape, kidnapping and harassment while he was armed with a deadly weapon.

Dkt. 13, Ex. 11 at 3-4; *Lawler*, 194 Wash. App. at 279-80 (citations to the record omitted).

## PROCEDURAL HISTORY

Petitioner appealed his conviction, raising the three grounds for relief he raises in this habeas petition. Dkt. 13, Ex. 8. The Court of Appeals denied his appeal in an opinion that was published in part. *Id*. Ex. 11. Petitioner filed a petition for review with the Washington State Supreme Court, again alleging the three grounds for relief he raises in this habeas petition. *Id*., Ex. 12. That court denied review and petitioner did not request that that court modify the ruling. *Id*., Ex. 13. This timely habeas petition followed.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly

1   established federal law, as determined by the Supreme Court, or if the decision was based on an

2   unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

3         A federal court may grant a habeas petition under two circumstances. First, a federal

4   habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

5   by the Supreme Court on a question of law, or if the state court decides a case differently than

6   the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529

7   U.S. 362 (2000). Second, a federal habeas court may grant the writ if the state court identifies

8   the correct governing legal principle from the Supreme Court's decisions but unreasonably

9   applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear

10  that a state court's decision may be overturned only if the application is "objectively

11  unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). AEDPA requires federal habeas

12  courts to presume the correctness of state courts' factual findings unless applicants rebut this

13  presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In addition, review

14  of state court decisions under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the

15  state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82

16  (2011).

17                        **EVIDENTIARY HEARING**

18        The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

19  *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

20  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

21  the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

22  28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*,

23  563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief

24

1    under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's

2    factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

3    evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186.

4          Here, petitioner's claims rely on established rules of constitutional law. There are no

5    factual issues that could not have been previously discovered by due diligence. Finally, the facts

6    underlying petitioner's claims are sufficient to establish that a rational fact finder would have

7    found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

8    necessary to decide this case and petitioner's claims may be resolved on the existing state record.

9                                              **DISCUSSION**

10   **I.      Right to an Impartial Jury**

11         The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of

12   impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "The bias or prejudice of

13   even a single juror would violate [a defendant's] right to a fair trial." *Dyer v. Calderon*, 151 F.3d

14   970, 973 (9th Cir. 1998). "Due process means a jury capable and willing to decide the case solely

15   on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to

16   determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217

17   (1982). To succeed on an impartial juror claim, "a defendant usually bears the burden of

18   demonstrating that the challenged juror was biased[.]" *United States v. Mitchell*, 568 F.3d 1147,

19   1151 (9th Cir. 2009). To determine whether a juror is biased, the court asks whether a juror had

20   such fixed opinions that he or she could not impartially judge the defendant's guilt. *Davis v.*

21   *Woodford*, 384 F.3d 628, 643 (9th Cir. 2004).

22         Here, petitioner argues that Juror 23 was biased and should not have been placed on the

23   jury. When questioned during voir dire about whether anybody had any family members who

24

had been victims of sexual assault, 14 jurors, including Juror 23, indicated they had. Dkt. 13, Ex. 3 at 18-38. Juror 23 explained that his mother had been removed from the custody of her father at a young age due to abuse, that his sister was sexually abused by her stepfather when petitioner was a child, and that Juror 23's niece was in an abusive relationship when living with Juror 23. *Id*. at 30-31. He only had personal knowledge of the incident involving his niece; he was told about the other two incidents after the fact and was not personally involved. *Id*. Following these statements, the prosecutor asked how they would affect Juror 23's ability to remain unbiased:

> [Prosecutor]: Oh. So anything about, you know, those experiences that would cause you difficulty, given the nature of the charges, being fair and impartial.
>
> [Juror 23]: I don't see how I could be objective with all that past experience.
>
> [Prosecutor]: All right. So if the Court asked you to, you know, try to set aside your personal experiences and judge the case just on its merits, do you think you could do that?
>
> [Juror 23]: Honestly, I think that would be a pain in the neck, you know. I don't think I could be able to do that with all these experiences.

*Id*. at 32-33.

Later, when the venire was asked whether any of the jurors were still uncomfortable with sitting on the jury, Juror 23 raised his number. *Id*. at 78. However, neither party challenged Juror 23, either for cause or peremptorily, and defense counsel exhausted five of his six peremptory challenges without challenging Juror 23 or otherwise asking any follow-up questions. *See id*. at 85-87. In addition, the prosecutor challenged one juror for cause, defense counsel challenged two jurors for cause, and the trial court excused two other jurors. *Id*. at 54-57,83-84.

In denying petitioner's direct appeal, the Court of Appeals held:

> First, we emphasize again that the trial court is in the best position to evaluate whether a juror must be dismissed. [*State v. Davis*, 175 Wash.2d 287, 312 (2012)]. Our review is limited to juror 23's transcribed voir dire answers. We cannot assess juror 23's tone of voice, facial expressions, body language, or other forms of

nonverbal communication when making his statements. We also are unable to assess juror 23's nonverbal reactions to the trial court, counsel, or the other jurors' voir dire answers. The trial court was able to observe and evaluate juror 23 in a way that we cannot.

Second, as noted above juror 23's answers were at least slightly equivocal. His answers gave the impression that he was unsure whether he could be objective, not that he had a firm conviction of that fact. His answers seemed to convey a vague, nonspecific discomfort with the case rather than a firm bias. And his statement that it would be a "pain in the neck" to judge the case on its merits, seems to refer to inconvenience rather than bias. Unlike in *Irby*, we do not consider juror 23's statements to be "unqualified statement[s] expressing actual bias." [*State v. Irby*, 187 Wash. App. 183, 188 (2015)]. And again, the nonverbal aspect of these answers would be very important. For example, if juror 23 shrugged his shoulders or rolled his eyes when making these statements, the trial court and counsel may not have perceived any actual bias.

Third, the record shows that the trial court was alert to the possibility of biased jurors. This is not a case where the trial court was not paying attention to voir dire. The trial court expressly noted that several jurors stated concerns that they could not be fair. And before either party made challenges for cause the trial court suggested that two jurors be dismissed. Yet the trial court did not mention juror 23 or suggest that he be dismissed. This fact suggests that the trial court observed something during voir dire that lead it to believe that juror 23 could be a fair juror.

Fourth, the record shows that defense counsel also was alert to the possibility of biased jurors. This is not a case where defense counsel abdicated his responsibility to critically evaluate the jurors. Defense counsel agreed when the trial court suggested dismissing two jurors, moved to excuse two additional jurors for cause, and exercised five peremptory challenges. Yet defense counsel did not challenge juror 23 – or even ask follow up questions – despite juror 23's voir dire answers and his indication that he would be uncomfortable serving on the jury. This fact suggests that defense counsel observed something during voir dire that led him to believe that juror 23 could be a fair juror.

Fifth, it is significant that Lawler had a peremptory challenge available that he chose not to use on juror 23 and in fact remained unused.[1] This is not a situation where Lawler had no choice but to accept a biased juror. The fact that Lawler did not use an available peremptory challenge on juror 23 leads to a presumption that Lawler wanted juror 23 on the jury.

Finally, we acknowledge that the trial court must be careful not to interfere with a defendant's strategic decisions regarding jury selection. Although a trial court does

---

[1] It could be argued that not using a peremptory challenge on juror 23 waived Lawler's ability to challenge the trial court's failure to dismiss juror 23 sua sponte. *See State v. Crawford*, 21 Wash.App. 146, 151 (1978). However, the State does not make this argument and therefore we do not address it. [Footnote by Court of Appeals]

have a duty to dismiss biased jurors, a trial court in the exercise of its discretion may legitimately be less willing to dismiss a juror sua sponte than to grant a for cause challenge. Here, because Lawler did not challenge juror 23 for cause or use an available preemptory challenge to dismiss him, the trial court may have concluded that Lawler had made a strategic decision that he wanted juror 23 to serve on the jury despite his voir dire responses.

Based on all these factors, we hold that the trial court did not abuse its discretion in failing to excuse juror 23 sua sponte.

Dkt. 13, Ex. 11 at 11-13; *Lawler*, 194 Wash. App. at 287-89 (2016) (parallel citations and citations to the record omitted).

On a cold record, the Court should give deference, as the state court did, to the trial court who actually observed the juror and made the determination about his bias. *See United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995). The trial court apparently determined that Juror 23 did not have such fixed opinions as to make it impossible for him to act impartially and petitioner has not provided anything that would compel this court to forgo deference to that determination. Therefore, this Court concludes that the state court did not unreasonably apply clearly established federal law when it determined the trial court did not violate petitioner's rights in declining to excuse the juror sua sponte, nor that Juror 23 was biased such that his presence on the jury violated due process.

The state court also properly notes that both the judge at trial and defense counsel were alert to the possibility of bias in the jury pool, examining certain juror's statements and finding they were cause for dismissal. Dkt. 13, Ex. 3 at 83-84. The vigilance of the trial court and defense counsel implies a greater likelihood of an unbiased jury, not a lesser likelihood. Further, defense counsel retained a peremptory challenge and chose not to use it on Juror 23. This indicates that Juror 23 was not a biased juror who was inadvertently placed on the jury, but rather an unbiased juror allowed to remain there purposefully by both the court and defense counsel.

1   In addition, the Court finds respondent's argument persuasive that petitioner failed to

2   object to Juror 23 at trial and so cannot raise that issue here. The Court agrees that, absent

3   extraordinary circumstances, a defendant should not be able to sit silent about potential jury bias

4   until after he is found guilty to raise that alleged juror bias for the first time on appeal. As

5   respondent notes, to do so "would be equivalent to allowing the defendant to 'plant an error and

6   grow a risk-free trial.'" *United State v. Brazelton*, 557 F.3d 750, 755 (7th Cir. 2009) (citing

7   *United States v. Boyd*, 86 F.3d 719, 722-23 (7th Cir. 1996)).

8   Finally, the Court notes that, though defense counsel did not challenge Juror 23 during

9   voir dire, petitioner has not claimed that he was ineffectively assisted by counsel in this habeas

10  petition.[2] Because he has not challenged defense counsel's conduct, and because the state court

11  determined defense counsel's conduct was proper, this Court again defers to the state court and

12  presumes that defense counsel's actions were strategic rather than ineffective.

13  Thus, the state court did not unreasonably apply clearly established federal law in

14  determining petitioner's right to an impartial jury was not infringed.

15  **II.  Confrontation Clause**

16  The Confrontation Clause of the Sixth Amendment provides: "In all criminal

17  prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against

18  him."  U.S. Const. Amend. VI. The Confrontation Clause applies to the states through the

19  Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and it guarantees criminal

20  defendants the right to confront and cross-examine the witnesses against them.  *Chambers v.*

21  *Mississippi*, 410 U.S. 284, 294-95 (1973).  "The main and essential purpose of confrontation is to

22  secure for the opponent the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308,

23

24  ────────────────────
      [2] The Court notes he did raise such a claim on direct appeal, but has now abandoned that claim. Dkt. 13, Ex. 11 at 13-15.

1   315-16 (1974). Moreover, a Confrontation Clause violation is subject to harmless error analysis.

2   *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986). Such a violation is harmless, and does not

3   justify habeas relief, unless it had substantial and injurious effect or influence in determining the

4   jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993).

5          Petitioner argues that his right to confront the witnesses against him was violated when

6   the trial court did not allow him to present evidence of drug use by MDJ, the victim in his case.

7   Dkt. 7 at 7. He argues that MDJ had a drug problem and "[t]he defense theory [at trial] was that

8   she lied about many of her claims regarding the incident in order to obtain more pills [when she

9   was at the hospital]." *Id.*

10         It appears that in the defense's opening statement, which was not transcribed, counsel

11  made references to drug seeking habits of MDJ that the prosecutor found objectionable. Dkt. 13,

12  Ex. 3 at 247-48. In clarifying that he did not intend to bring up any drug seeking behavior from

13  before the incident, defense counsel stated:

14         What I am responding to is the very late, late received SANE nurse – the nurse's
           report that said there were multiple requests, and [the prosecutor] brought it up in
15         opening when he said she had these ongoing problems and she needed medication.

16         So it's a clear response to that, where she gave – I'm not talking about the illegal
           pills or marijuana or anything else. I'm talking about what the SANE nurse is going
17         to report.

18  *Id.* at 249.

19         The Court ultimately ruled that, if the prosecution raised drug-seeking behavior from

20  before the incident, the defense would be allowed to respond to it with additional evidence. *Id.* at

21  250. However, the Court did not exclude MDJ's behavior after the incident when she was at the

22  hospital. Indeed, in examining MDJ's medical treatment providers, defense counsel was able to

23  elicit testimony about what paint medication MDJ was provided and her requests for pain

24

1    medication. *See id.*, Ex. 5 at 360-61; 372-74; 440-41. However, he did not ask MDJ about the

2    pain medication when he cross-examined her.

3          In rejecting petitioner's argument, the Court of Appeals held:

4          If Lawler's argument had been that MDJ fabricated the entire incident in order to
           obtain medication, her drug-seeking behavior may have had some relevance.

5          However, Lawler argued only that she complained of pain at the emergency room
           in order to obtain pain medication.[3] Whether or not MDJ actually was in pain at the

6          emergency room had minimal relevance to whether she had been assaulted,
           kidnapped and raped. Further, there is no question that evidence regarding drug-

7          seeking behavior was prejudicial. The trial court in its discretion ruled that the
           prejudicial effect of this evidence outweighed its relevance.

8
           Finally, the trial court expressly stated that its ruling on admissibility would be
9          reconsidered if Lawler came forward with additional argument regarding the
           relevance of MDJ's drug-seeking behavior. Lawler did not make any further

10         argument or revisit this issue when MDJ testified.[4]

11         We hold that the trial court did not abuse its discretion in denying Lawler's initial
           request to cross-examine MDJ regarding her drug-seeking behavior. Accordingly,
12         we hold that the trial court did not violate Lawler's constitutional right to confront
           witnesses against him.

13   Dkt. 13, Ex. 11 at 18-19; *Lawler*, 194 Wash. App. at 291.

14
           Here, petitioner argues that the trial court's ruling improperly forbade him from
15
     presenting evidence against MDJ, arguing a defense that MDJ exaggerated her symptoms to gain
16
     additional pain medication. However, the trial court did not exclude the evidence that MDJ asked
17
     for pain medication at the hospital. Rather, it only excluded the evidence of drug use prior to the
18
     incident. Further, petitioner at trial argued that MDJ may have been lying to obtain pain
19

20
     _____
     [3] Lawler argues on appeal that his theory at trial was that MDJ "made up many of the details of the story she told at
21   the hospital in order to obtain pain medication." Br. of Appellant at 19. However, the argument Lawler made at trial
     was not this broad. [Footnote by Court of Appeals]
22   [4] It appears that in opening statement (which was not transcribed), Lawler said something that made the State
     comment about drug-seeking behavior. The trial court did not remember excluding the evidence. The trial court
23   stated that if the State opened the door on direct, Lawler would have the opportunity to inquire regarding this
     subject. The trial court did allow Lawler to cross-examine MDJ as to whether or not she had been using marijuana or
     prescription drugs the night of the incident. [Footnote by Court of Appeals]
24

1    medication at the hospital, but did not provide an argument that she lied to obtain pills otherwise.

2    Thus, any evidence of drug-seeking behavior prior to the incident has little or no relevance

3    unless petitioner argues MDJ fabricated the entire event to get drugs – an allegation petitioner

4    did not make in state court and does not make here.

5        Petitioner had an opportunity to cross-examine MDJ at trial and he did elicit testimony

6    about her pain medication. The trial court's decision to exclude evidence of her prior drug habits

7    did not prevent him from adequately confronting her. Thus, the trial court's decision cannot be

8    said to have had a substantial and injurious effect on the jury's verdict and the state court did not

9    unreasonably apply clearly established federal law when it made that determination. Therefore,

10    the Court recommends petitioner's habeas petition be denied as to this ground.

11    **II.    Prosecutorial Misconduct in Closing Argument**

12        A prosecutor commits misconduct if the prosecutor's improper comments "so infected the

13    trial with unfairness as to make the resulting conviction a denial of due process." *Darden v.*

14    *Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam)

15    (*Darden* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)).  A

16    trial error is presumed to be harmless unless the error had "substantial and injurious effect or

17    influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

18    It is the petitioner's burden to state facts that point to a real possibility of constitutional error in

19    this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990).

20        Closing arguments are not evidence and ordinarily carry less weight with the jury than

21    the court's instructions.  *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177

22    F.3d 901, 909 (9th Cir. 1999).  Prosecutorial argument should not result in reversal where the

23    trial court instructed the jury that its decision is to be based solely upon the evidence, where the

24

defense did not object, where the comments were an "invited response," or where there is

overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly v. DeChristoforo*, 416 U.S.

637, 640-45 (1974); *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir.1993); *Hall v. Whitley*, 935

F.2d 164, 165-66 (9th Cir.1991).

Here, petitioner objects to the following statement made by the prosecutor in closing

argument:

> And the reason I bring this up is [MDJ] came in, she came into a group of strangers in a rather grand, rather intimidating courtroom setting and she took the stand. And she talked about a nonconsensual experience. The variable for her that wasn't present in my hypothetical during jury selection was while she's talking about that experience, the person that was there was seated a few feet to her left. *And he's sitting there a few feet to her left where he can eye her, stare her down.*

Dkt. 13, Ex. 6 at 564.

Defense counsel immediately objected, and the Court responded:

> And, members of the jury, as I advised you earlier, what the attorneys say is not evidence in the case. It's up to you as the jury to reach the facts from the evidence you heard. That includes closing argument here. So whether something is a part of the evidence or is not would be up to you to conclude. Counsel are certainly not to suggest something that they don't believe or think that the evidence did present, but it is up to you to reach those conclusions.

*Id.*

The prosecutor then continued:

> So that's the context with which she gets up in front of all of you to testify. And we heard testimony from Deputy Smith and other people. Nurse Patton, she was hiding under the blankets. Deputy Smith, that she seemed submissive. At various times throughout the incident over the night she curled up in the fetal position or she stopped fighting and she'd just sit there and cry.

> So here she is in what I would argue is a highly stressful situation for her. And was she acting in a way – again, going back to preconceived notions – the way we would expect from a victim? Well, that's up to you guys. But what I would ask is that when you're judging her credibility and the credibility of the testimony that you keep these things in mind in that lens that you view her testimony.

*Id.* at 564-565

In denying petitioner's direct appeal, the Court of Appeals stated:

The prosecutor's comment about Lawler eying and staring down MDJ was in the context of an argument about MDJ's credibility. The prosecutor was discussing how difficult it was for MDJ to testify about a nonconsensual sexual experience in an intimidating courtroom setting, particularly with Lawler sitting a few feet away. After Lawler objected, the prosecutor concluded:

> So here she is in what I would argue is a highly stressful situation for her. And was she acting in a way – again, going back to preconceived notions – the way we would expect from a victim? Well, that's up to you guys. But what I would ask is that when you're judging her credibility and the credibility of the testimony that you keep these things in mind in that lens that you view her testimony.

This context shows that the prosecutor was not commenting on Lawler's demeanor or arguing that Lawler's demeanor was evidence of his guilt. The prosecutor did not suggest that it was significant that Lawler was staring down MDJ or even that Lawler was in fact staring her down. Instead, the point was that he *could* eye MDJ and stare her down as she was testifying, which made it more difficult for her to testify. The prosecutor did not argue or even imply that the jury should consider Lawler's demeanor in deciding the case.

Dkt. 13, Ex. 11 at 20-21; *Lawler*, 194 Wash. App. at 291 (citation to record omitted).

In this case, the prosecutor's comment was a minor and isolated statement within his larger argument. Though a single comment made by a prosecutor can prejudice a defendant, the statement must be so outrageous as to infect the trial process and make the conviction a violation of due process. That is not the case here, where defense counsel promptly objected and the trial court immediately instructed the jury on its duty to make a determination based on the evidence, not the attorneys' statements. A minor statement that is immediately remedied cannot be said to be so damaging as to infect the entire trial.

Further, taken in context, the prosecutor was not commenting on petitioner in order to disparage him in the eyes of the jury. This comment came in the midst of the prosecutor's discussion of MDJ's testimony and how the jury can use her demeanor on the stand in order to help them determine credibility. As the state court noted, he did not state petitioner could "stare

down" MDJ in order to make petitioner seem predatory or to otherwise improperly influence the jury. Rather, he made that comment in order to describe MDJ's state of mind when she was testifying. The prosecutor noted that she acted on the stand much the same way she acted in the aftermath of the incident, and then used the fact of petitioner's presence in an attempt to describe that MDJ's actions were consistent with that of a victim. The prosecutor did not ask the jury to make a decision of guilt based on petitioner's demeanor at trial. Taken in context, his comment was appropriate.

Finally, an attorney's comments do not warrant reversal if the court has properly instructed the jury to rely only on the evidence at trial when rendering its verdict. *Darden*, 477 U.S. at 182. Immediately after the prosecutor's statement, the trial court instructed the jury that their decision must be based on evidence, and that counsels' comments are not evidence. Dkt. 13, Ex. 6 at 564. Further, the court provided the jury with an instruction before they went into deliberations, again exhorting them to rely only on the evidence presented at trial, and again reminding them that counsels' comments are not evidence. *Id*., Ex. 7 at 28. The trial court properly instructed the jury to rely only on evidence multiple times. Because a verdict should not be overturned based on a prosecutor's comments when the jury has been properly instructed on the evidence, the Court should not overturn this conviction. Therefore, the Court recommends petitioner's habeas petition be denied as to this ground.

## CERTIFICATE OF APPEALABILITY

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

1   2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

2   disagree with the district court's resolution of his constitutional claims or that jurists could

3   conclude the issues presented are adequate to deserve encouragement to proceed further."

4   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

5   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

6   certificate of appealability with respect to this petition.

7                                                 **CONCLUSION**

8          Petitioner has not demonstrated that he had a biased juror on his jury, that he was

9   unlawfully prohibited from confronting the witnesses against him, or that the prosecutor's

10  comments in closing argument amounted to misconduct so damaging as to render the verdict a

11  violation of due process. Therefore, the Court recommends petitioner's habeas petition be

12  denied.

13         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

15  6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

16  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

17  of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

18  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

19  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **June**

20  **1, 2018**, as noted in the caption.

21         Dated this 9th day of May, 2018.

22

23         _____
           J. Richard Creatura

24         United States Magistrate Judge

REPORT AND RECOMMENDATION - 18